We turn now to case number two which is United States v. Krejza. I will need help with that pronunciation when the parties approach. It's appeal number 25-1770. And I see we have Mr. Nash at the podium. You may begin when you're ready. Please the court, judges. Mr. Krejza is how he pronounces it. Thank you. First question, judge. Has presented four arguments. Embezzlement, which has three facets, two evidence issues, and variance. And we're very aware of the expressive and unusually good reasons this court has stated that sufficiency is an uphill battle. But this is a somewhat unique case, I think. The most compelling fact to me in the record before the court is actually one of the government's arguments on page 28 of its brief, or 29, before this court. Where it argues that the jury could have found Mr. Krejza guilty of abstraction or purloinment. Two words that are not too common in the English language and certainly not in the criminal law. The fact is that the jury... I'm going to stop you right there, Mr. Nash. Because to help us with this, a defendant who is part of a conspiracy, of course, does not have to have participated in every act of the conspiracy. Or even been capable of engaging in every act of the conspiracy. So why does the government even have any need to have charged him with abstraction or purloinment? Well, the jury's verdict, Your Honor, said that a defendant is guilty of aiding and abetting embezzlement. That's the jury's verdict. I agree with Your Honor, and I remember a case from years ago, I think I was sitting at that table at that time, where it was a nod of the head from across the street. But that isn't the case here. This case was embezzlement. Thirteen times in the indictment. The government's indictment, which they said was very detailed, said embezzlement, embezzlement, embezzlement. But let's assume we agree with you that embezzlement was the horse they rode in on and what the jury found. And so the government is stuck with that. Here, the government showed to the jury two payments to GEMBARA or GEMBARA's insurance agency from your client's loan proceeds. Why wouldn't that be sufficient to sustain Mr. Krejcia's conviction? Judge, their indictment said that the embezzlement was the use of the proceeds for purported loans. The evidence showed that they weren't purported loans. They were real loans. And the proceeds were not embezzlement. They were payments to build a house. And the third and most important part of the answer to your question, Mr. Krejcia never made that payment. The bank made that payment to the GEMBARA insurance agency. He didn't have anything to do with it. He isn't even aware of it from the record before this case. Wouldn't even know it had taken place. And the indictment was not about that. It was about purported loans, false loans, the proceeds of which were used to embezzle money. That was clear. They didn't prove it. They said so in their final argument when they said maybe at the beginning they were real loans. And the reason they say they become embezzlement is that he didn't pay a monthly interest cost. That's not embezzlement. Simply not embezzlement. The way a client or a lender here, Mr. Krejcia, spends the money can't make it embezzlement. The law for 135 years in this court and the Supreme Court of the United States has been the embezzler must appropriate the proceeds of the embezzlement for his own use. Are you arguing that although the entrusted property must be converted to an embezzler's own use, that use is not necessarily the embezzler's own consumption or benefit. It means that the embezzler took the money entrusted to him and used it for something that it was not intended to be used for, seems to me. It isn't the intended use. It's got to be embezzlement. And it didn't do anything for Mr. Gimbera. Mr. Gimbera didn't get any benefit from that. Well, certainly you're not arguing that he didn't get benefit here. He didn't. He got no benefit. No benefits. And that's absolutely clear in the record. The other thing is. Seems to me that Gimbera converted the funds with Krejcia's help and Krejcia used the funds for his own benefit. For whose benefit? For his own. But whose own? His own? Krejcia's own. Krejcia used it for his benefit. None went to Gimbera's benefit. And the law for 135 years is it must be used for Gimbera's benefit. Some of it. They say that's not the law. They say that here we added that element. But the case is very clear. The case is cited by the government and the trial court. The most important of which is Bailey. And it's in our brief. An essential element is that it must be used for the embezzler's benefit. They said in the district court. The conspirator need not do each action or gain each benefit. I'm not understanding you, Judge. I'm sorry. That's because I'm not understanding you. And that's my fault, Judge. Oh, no, not necessarily. Keep going. The judge instructed the jury that the case was embezzlement. Why would the government come before this court and try to persuade you that it was about abstraction and proloyment when they said it's about embezzlement? The judge instructed the jury it was embezzlement. They told the court it was embezzlement. Why would they argue before your honors otherwise? There's no evidence of the falsification of records and the variance. The variance in this court is attempt to persuade you something that wasn't charged in the indictment. What you're saying, you're saying that it matters that the government only would have charged Krasher with conspiracy to embezzle and not this abstraction. They didn't charge him with that. They charged him just with conspiracy. They told the court that. They've told you in their brief before this court it's embezzlement. Okay. Let's say a bank president takes a borrower's mortgage payment that was intended to pay down a loan and secretly gives it back to the borrower because he wants to appear to be a generous man or I don't know because he wants to make the borrower feel indebted to him. Is that embezzlement? I don't believe so. If I was the prosecutor I'd charge him with something different. I wouldn't get into an argument about embezzlement. But they didn't charge him with something else. They charged him with embezzlement. One of Judge Roeder's earlier points, they charged him with conspiracy. Right. You keep saying embezzlement. And the trial judge, I'm sorry Judge Gwine. I didn't mean to interrupt. That's my point. They charged him with conspiracy. They did. And the judge instructed the jury this is a conspiracy to embezzle. That instruction was given to the court by the government. The conspiracy was to embezzle money from Washington Savings and Loan. And the actual instruction to the jury was the indictment charges the defendants committed the crimes of conspiracy to embezzlement from a bank and aiding and abetting the embezzlement from a bank. That's at docket 1190, page 3. That's the instruction they tendered to the court. That's the instruction the court gave the jury. Now, Mr. Nash, you are over halfway into the rebuttal time. Yes. Do you want to still reserve? I'd like to get on to one other issue, I think. Okay. The other loan evidence. The issue here is how do you defend a case of intent to defraud somebody when you're not able to show the jury the full relationship between you and the alleged victim? In this case, the defendant, during the conspiracy, repaid three of four other loans he made from the same bank. Think about that for a minute. During the alleged conspiracy to defraud the bank, he paid three other loans back. Whether he immediately intended to participate in the embezzlement scheme or whether he originally intended to pay back one or all loans, does the defendant have to be a member of the conspiracy from the get-go? No, but it is an issue at the get-go. They say that the reason it became embezzlement was that you didn't pay some of the money back, but that's not a part of embezzlement. Mr. Nash, why don't we pick up there on rebuttal? Pardon me? We can pick up there on rebuttal. Fine. Thank you, Judge. I appreciate that. You're welcome. Oh, I drank out of the wrong cup. And it's flu season at your apparel. Mr. Snell. Good morning, Your Honors. May it please the Court, my name is Jeff Snell. I represent the appellate. With respect to the issue that was just raised about embezzlement and what was charged, what was charged in this case? The defendant was charged with violating Title 18 United States Code Section 656 and also he was charged with conspiring to violate that statute as well as another statute with respect to making false entries in books and records. But 656 has a number of elements, but one of which is a conversion element. And that conversion element entails embezzlement, abstraction, colloidment, and willful misapplication. The indictment charges the defendant with all of those types of conversion or conspiring in aiding and abetting those types of conversion as part of the violation of Title 18 United States Code 656. With respect to the definition of embezzlement, the parties disagree on that definition because the instruction that the court gave to the jury, first it did include abstraction and colloidment. It went through the elements of Section 656. But with respect to embezzlement, the court defined it, based on this Court's decision in Wheeler, as embezzlement is the fraudulent appropriation of property by one lawfully entrusted with its possession. And in Wheeler, it specifically involves a situation that's somewhat analogous to this situation in that the property that was embezzled were employees' payments for medical insurance and other withholdings that were directed to the company, the general operating account of the company. They weren't specifically taken by Wheeler. They were used for a purpose other than that with which they were entrusted, which is why it constituted embezzlement. The variance argument, these were charged as being purported loans. And the reason why is that for more than a decade, the defendant would walk into the bank, meet with Individual A, who is John Gambara, and he would leave with a check. And in the bank's books and records, the way the money left the bank was being recorded to a loan. And the loans, which had recurring promissory notes at times, if any documentation at all, had certain provisions, including monthly payments, payment of taxes. And at no point, with respect to the loans on these three properties that were charged in the indictment, at no point did the defendant ever make a monthly payment or ever pay the real estate taxes, although the loan documents required it to do so. And Mr. Snell, let me stop you for a second. Just so I'm clear about the facts here, am I correct in assuming that one of the differences between the first three loans and the last three is that Gambara took over as president of the bank in the interim? Do you know what year he took over from his father? Your Honor, in the record, the evidence was that the father had passed by 2005 or 2006. And so he had taken over around that time or a little bit before. And that is, Your Honor, hit on the fundamental difference between this first set of loans and the second set of loans. And those differences include that the defendant, by his own account, made payments on the first set of loans, made the monthly payments. And that was also corroborated by one of the bank witnesses who testified that the defendant used to make payments. That all stopped when John Gambara took over. And individuals known as friends of John, of which the defendant was one, would not make monthly payments, and yet they would not lose the collateral. I hear you on the number of differences between the first three loans and the subsequent loans. But why don't those differences go to probative value and go to weight versus admissibility? And my larger question there is, the government is able to prove intent, to try to prove up intent to the jury. Why is it not harmless? Let me make sure I don't have all my nots correct. If Mr. Krejcia can't do the same. Yes, Your Honor. So the loans were excluded based on the distinctions between the first set of loans and the second set of loans as not being indicative of intent. But even if they evidenced some general intent to repay, that would be different than the intent to embezzle, as established by the evidence and as required, because it would not be a defense that one intended to return property that was embezzled at a later date. The embezzlement occurs when the money leaves the bank. And in this case, we have a 12-year period where, for at least a decade of that, the money is leaving the bank on loans that are purported to involve the construction of- But those are all arguments the government could have made to the jury, all while preserving Mr. Krejcia's ability to say to the jury, look, I did have a history of repayment. And this is consistent with the story that he wants to tell the jury, that the economic conditions and his lawsuits and et cetera, et cetera, interfered with his ability to repay the subsequent loans. Why are those not just arguments that both parties can make to the jury and not a question of admissibility? Well, they could be arguments, Your Honor. Why the loans, the prior loans were kept out was the determination that they weren't relevant to the intent element, but also the 403 issue. And the 403 issue arises from the fact that there were not complete records. There were substantially incomplete records, to state it differently. I understand the trial court's issue with the incompleteness of the records, also the potential that the jury might be confused or this might create a sideshow in a trial within a trial. I understand all of that. But on harmless error, we're having to ask ourselves, would Mr. Crazier's case have been different, would have hit a juror differently with this evidence? And, Your Honor, I think to that point, I think the answer is it would not. And the reason why is because of the distinctions between the two time periods of when Mr. Gambara's father was alive and loans got repaid, and then after that, when Mr. Gambara took over and had control of the bank, when things fundamentally changed. Your answers all seem to me to continue to go to weight, the probative value of the evidence. Yes, but I believe with the evidence, I think a reasonable juror would not think that the government's case was substantially impacted or weakened by the admission of the prior loans. And that's what I was attempting to address. The argument that John Gambara obtained no benefits from the embezzlement, I think that the evidence can actually be looked at differently on that, because a key way that the defendant was able to get funds from the bank was by taking loan verification forms into the bank and signing them, verifying that these loans existed and were properly stated in the amount on the bank's books. And that was of great importance to John Gambara. There was testimony, and I think the jury could have concluded that the reason that was important was because of this large embezzlement conspiracy that John Gambara was presiding over. The – So wait, is the argument that Gambara benefited simply because Krasia was, in your view, playing along with the larger embezzlement by bringing in these loan verification forms? Yes, Your Honor. John Gambara had a larger conspiracy that involved more individuals than just Miroslav Krasia. And the evidence, including testimony from the loan processor who took Krasia's calls, she testified there sometimes weekly trying to get these appointments with John Gambara to come in. He would come in and then he would leave with a check for $5,000, $10,000, $20,000. And this was being booked to loans that the construction had ceased on these properties long before the properties were left deteriorating. I think you have to help me with the benefit to Gambara, though. Is it – he's got a cog in the wheel that is not causing problems or not presenting a red flag to bank examiners? I mean, otherwise he could just cut Krasia out of the picture. Why give Krasia loans if there's – I mean, I think that's what Mr. Krasia wants to argue here is that there's no – what's the apparent benefit? If he's got other people he's helping who are giving kickbacks or money. There was evidence of other people giving kickbacks or money, but even the amount of those kickbacks in relative proportions was not substantial or not hugely substantial. So for instance, Mr. Krasia's brother-in-law, Bogoslav Kasprovich, obtained $14 million and kicked back approximately 1.7. So John Gambara, he was receiving kickbacks from some co-conspirators, but I think it was what Your Honor raised that it would – Mr. Krasia was staying happy and not raising red flags. And by completing these documents and going along with the documentation that was in the bank's books and records and allowing it to pass scrutiny of regulators until it didn't. If there's any other further questions I can answer, I'd be happy to. Otherwise, I'd ask that the Court affirm the judgment. Thank you. Thank you. Mr. Nash. With – I believe it was Your Honor's question about the father. The record doesn't show exactly when he left, and he had almost, as far as I know, when I was a participant, never mentioned in the trial, somebody asked one of the women that were clerks, did such and such happen when his father was the banker? And they said no, but there's no evidence he had any connection to these loans. When Ms. Bradley came on, she testified that Mr. Krasia had previously been – or Mr. Gambara had previously been Mr. Krasia's loan officer, but that they did not see eye to eye. And the other women said it was hard for Mr. Krasia to get a meeting with Mr. Gambara. But as the other question about what the government says, and what Your Honor asked, was imagine the defendant being able to tell the jury that during the alleged conspiracy, he paid the loan $1.8 million. How is that not relevant? How could it possibly not be relevant? And they say it was insignificant funds that the other borrowers kicked back to Gambara. The government just told you $1.7 million. I don't know in what neighborhood he lives, but that's a lot of money. Not insignificant. You know what I find interesting? Look, if I'd been the trial judge, I would have been inclined to allow it, but it very well could have been messy and confusing. We review these decisions for an abuse of discretion. I don't think this was one. The truth is, I think it would have hurt Mr. Krasia more than help him, because it demonstrates that he knew what a legitimate loan looked like and how things operate. Let them argue that to the jury. The judge, the district court judge said it had little bearing in 2017. A little bearing is bearing. Bearing is relevance. The rule says any relevance, and the cases say it tilts towards admission. Was there an explicit 403 balancing done here?  Was there an explicit 403 balancing done here? None. Okay. I would ask your honors to look at a case, United States v. Miller. It's a Seventh Circuit case decided in 2012. In that case, the same trial judge ruled that the government could have put in evidence of an eight-year-old narcotics conviction of the defendant to prove intent. The difficulty with that was intent was not the issue. The issue in that case, the defendant said the drugs weren't mine. It's not a question of intent. And this case reversed that decision. And since that time, it's decided several other cases, where, as your honors says, spells out how to balance. Look at what the benefit to the party offering the evidence is, and balance that against any prejudice that might exist. As your honors said, there's no prejudice to the government from admitting the evidence, and it allows the government to make the arguments they made before you 10 floors down, not here. Mr. Nash, let me see if my colleagues have any final questions for you. If there are no more questions, I've used my time. Thank you very much. Thank you to both parties. We are going to take a 10-minute break before we call the next case.